**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**CASE NO:**

JAY ANICH, on behalf of himself and
all others similarly situated, and
KRYSTLE ANICH

Plaintiff(s),

v.

QUEST HOSPITALITY CONCEPTS, LLC
D/B/A THE CITIZEN

Defendant.
_______________________________________/

**COLLECTIVE AND CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiffs, JAY ANICH and KRYSTLE ANICH (collectively, "Plaintiffs"), bring this Collective and Class Action Complaint against Quest Hospitality Concepts, LLC d/b/a The Citizen ("Defendant"). Under 29 U.S.C. § 216(b), Plaintiff JAY ANICH asserts an FLSA collective claim on behalf of himself and all others similarly situated. In addition, Plaintiff JAY ANICH brings parallel Rule 23 class claims under the Florida Minimum Wage Amendment, Fla. Const. art. X, § 24, and Fla. Stat. § 448.110, on behalf of similarly situated servers. Separately, JAY ANICH and KRYSTLE ANICH each assert an individual Florida common-law claim for tortious interference with a business relationship, specifically, their subsequent employment with another entity unrelated to Defendant.

**INTRODUCTION**

1. Plaintiff Jay Anich asserts one FLSA collective claim on behalf of himself and similarly situated servers: unlawful diversion of tips and mandatory tip-outs to ineligible recipients, in violation of 29 U.S.C. § 203(m).

2. The practice challenged under the FLSA is primarily Defendant's implementation and operation of a tip pool/tip-out that includes persons who are not "customarily and regularly" tipped.

3. Plaintiff Jay Anich and the putative FLSA collective are entitled to: (i) all tips unlawfully retained, diverted, or distributed to ineligible recipients; (ii) unpaid federal wages (iii) an equal amount as liquidated damages; and (iv) reasonable attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b) (and § 203(m) as applicable).

4. Plaintiff Jay Anich further asserts Rule 23 class claims under Fla. Const. art. X, § 24 and Fla. Stat. § 448.110 based on Defendant's (i) failure to provide legally sufficient tip-credit notice to Plaintiff and all other servers before paying a reduced direct cash wage during the applicable limitations period and (ii) failure to pay at least the full Florida minimum wage for hours Plaintiff and all other servers spent performing non-tipped duties, including side-work, in amounts exceeding "more than occasional" limits, instead paying a reduced direct cash wage during the applicable limitations period.

5. As a result of the foregoing violations, any tip credit claimed by Defendant is forfeited and invalid. Plaintiff Jay Anich and the putative Rule 23 classes are entitled to recover the full Florida minimum wage for all hours worked during the affected workweeks, together with liquidated damages, reasonable attorneys' fees and costs, and such other relief as permitted by Fla. Const. art. X, § 24 and Fla. Stat. § 448.110.

6. Jay Anich and Krystle Anich also each assert individual Florida common-law claims for tortious interference with a business relationship. Plaintiffs each allege that Defendant knowingly and intentionally communicated with Plaintiffs' subsequent employer, an unrelated third party, without justification or privilege, for the purpose of inducing that employer to terminate Plaintiffs' at-will employment. Defendant's interference caused Plaintiffs' subsequent termination of employment and resulting damages.

## PARTIES

7. During all times material hereto, Plaintiff Jay Anich was a resident of Walton County, Florida, over the age of 18 years, and otherwise *sui juris*.

8. During all times material hereto, Plaintiff Krystle Anich was a resident of Walton County, Florida, over the age of 18 years, and otherwise *sui juris*.

9. Defendant is the owner and operator of The Citizen located at 20 Mark Twain Ln. in Alys Beach, Walton County, Florida 32461, and is responsible for its day-to-day management, control, and business operations.

10. Plaintiff Jay Anich and the putative FLSA collective members are/were restaurant servers who worked for Defendant within the last three (3) years at The Citizen in Walton County, Florida.

11. Plaintiff Jay Anich and the putative FMWA class members are/were restaurant servers who worked for Defendant within the last five (5) years at The Citizen in Walton County, Florida.

12. Jay Anich worked for Defendant as an hourly-paid, non-exempt restaurant server at The Citizen located at 20 Mark Twain Ln. in Alys Beach, Walton County, Florida 32461, from sometime from on or about May 15, 2024, until on or about August 14, 2025.

13. Krystle Anich worked for Defendant as an hourly-paid, non-exempt restaurant server at The Citizen located at 20 Mark Twain Ln. in Alys Beach, Walton County, Florida 32461, from sometime in June 2024 until on or about August 14, 2025.

14. The proposed collective and class members worked for Defendant in the same capacity as Plaintiff Jay Anich in that they were non-exempt, hourly-paid servers for Defendant at The Citizen, located at 20 Mark Twain Ln. in Alys Beach, Walton County, Florida 32461.

15. Plaintiff Jay Anich seeks certification of one collective under 29 U.S.C. § 216(b), as follows:

> **<u>Tip-Pool Collective</u>: All current and former individuals employed by Defendant as servers (including those titled "server," "waiter," or "waitress") at The Citizen in Walton County, Florida, who, at any time within the three years preceding the filing of this Complaint, (i) were required to participate in a tip pool that included ineligible participants (e.g., non-tipped back-of-house personnel such as oyster shuckers), or (ii) had any portion of their tips retained, shared, or diverted to ineligible participants.**

16. Plaintiff Jay Anich seeks certification of two separate classes under Fed. R. Civ. P. 23, the FMWA, and Florida Constitution, as follows:

> **<u>Tip-Notice Class</u>: All current and former individuals employed by Defendant at The Citizen in Walton County, Florida, as servers (including those titled "server," "waiter," or "waitress") during the five (5) years preceding the filing of this action who were paid less than the full Florida minimum wage based on Defendant's taking of a tip credit and who did not receive the legally required tip-credit notice before the tip credit was taken.**

> **<u>Dual-Jobs Class</u>: All current and former individuals employed by Defendant at The Citizen in Walton County, Florida, as servers (including those titled "server," "waiter," or "waitress") during the five (5) years preceding the filing of this action who were paid a direct cash wage below the full Florida minimum wage while required to perform non-tipped work (either duties of a separate, non-tipped occupation or related side-work exceeding "more than occasional" limits), without being paid at least the full Florida minimum wage for that time.**

17. The precise size and identity of the putative classes should be ascertainable from the business records, tax records, and/or personnel records of Defendant; however, Plaintiff estimates that the total number of class members exceeds 50 servers.

18. Defendant was the "employer" of Plaintiff Jay Anich and all members of the putative collective and classes as that term is defined by the FLSA and FMWA during all times pertinent to the allegations herein.

19. Defendant exercised operational control over Plaintiff Jay Anich and other servers by hiring and firing employees; setting schedules; determining the rate and manner of pay (including any claimed tip credit); directing day-to-day duties; controlling the composition and distribution of any tip pool; and maintaining payroll and time records.

20. Through centralized policies and payroll, Defendant dictated servers' pay practices and the structure and distribution of the tip pool.

## <u>JURISDICTION AND VENUE</u>

21. This action is brought under 29 U.S.C. § 216(b), Fed. R. Civ. P. 23, the Florida Minimum Wage Act ("FMWA") and Article X, Section 24 of the Florida Constitution to recover damages from Defendant.

22. This Honorable Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

23. The acts and/or omissions giving rise to this dispute took place within Walton County, Florida, which falls within the jurisdiction of this Honorable Court.

24. Defendant regularly transacts business in Walton County, Florida, and jurisdiction is therefore proper.

25. Venue is also proper within Walton County, Florida.

26. Plaintiff Jay Anich fulfilled all conditions precedent required to bring class action claims under the FMWA.

27. Specifically, on August 28, 2025, Jay Anich, through his counsel, served Defendant with a written pre-suit demand notice regarding his FMWA claims, requesting Defendant to pay his and the putative FMWA classes the minimum wages owed to them.

28. Despite receiving that pre-suit demand, Defendant did not cure within fifteen (15) days and did not pay Mr. Anich or the putative FMWA classes the total amount of wages owed under the FMWA.

**FLSA COVERAGE**

29. Defendant is, and at all relevant times was, an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A) by virtue of the fact that Defendant had at least two (2) or more employees engaged in commerce or in the production of goods for commerce, and/or two (2) or more employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

30. Further, at all material times, Defendant's employees regularly handled, sold, or otherwise worked with goods that moved in interstate commerce, including food and beverage products, such as beef, chicken, pork, eggs, crab, salmon, tuna, olives, pasta, lobster, avocados, cheese, shrimp, shallots, flour, fruit, bread, wine, coconut, lettuce, tomato, scallops, arugula, broccolini, carrots, lentils, and potatoes.

31. Defendant's employees also regularly handled materials and equipment that moved in interstate commerce, such as pens, paper, receipts, computers, credit card processors, cleaning supplies, linens, and point-of-sale software.

32. During each year in the applicable limitations periods (2020, 2021, 2022, 2023, 2024) Defendant had gross annual revenue in excess of $500,000.00, and Defendant is expected to have gross annual revenue in excess of $500,000.00 in 2025.

## FACTUAL BACKGROUND

33. Jay Anich worked for Defendant as an hourly-paid, non-exempt restaurant server at The Citizen located at 20 Mark Twain Ln. in Alys Beach, Walton County, Florida 32461, from sometime from on or about May 15, 2024, until on or about August 14, 2025.

34. Krystle Anich also worked for Defendant as an hourly-paid, non-exempt restaurant server at The Citizen, from sometime in June 2024 until on or about August 14, 2025.

35. Both Jay and Krystle Anich resigned from The Citizen on or about August 13, 2025. Their last day of work at The Citizen was August 14, 2025.

## DEFENDANT'S TIP-POOL/TIP-OUT POLICY MISALLOCATED SERVERS' TIPS TO WORKERS WHO DO NOT CUSTOMARILY AND REGULARLY RECEIVE TIPS

36. Pursuant to the FLSA, where an employer takes the tip credit, it may not keep any portion of employees' tips and must restrict any tip-pool or tip-share to workers who customarily and regularly receive tips. *See* 29 U.S.C. § 203(m)(2)(A)–(B); § 203(t)).

37. During the past three (3) years preceding the filing of this Complaint, Defendant compelled tip-pooling and/or tip-outs that included ineligible, non-tipped personnel, thereby diverting servers' tips to workers who do not customarily and regularly receive tips.

38. For example, Defendant required servers, including Jay Anich and Krystle Anich, to tip-out oyster shuckers who worked at a station off to the side of the kitchen.

39. Although The Citizen had nearby seating that patrons sometimes used during busy periods, that area, if ever assigned, was assigned to servers.

40. Oyster shuckers primarily prepared items (e.g., ceviche) without direct, regular interaction with customers.

41. Moreover, when customers ordered items traditionally prepared by the oyster shuckers, servers, including Jay Anich, still had to deliver those items to the table; the shuckers did not directly serve customers or otherwise provide table service.

42. Defendant imposed the same tip pool/tip-out requirement on every server each shift, including former servers Jay Anich and Krystle Anich, diverting tips to ineligible personnel through a standardized and uniform process.

43. Participation in the tip pool and the diversion of tip income to ineligible participants were conditions of employment and applied uniformly to Plaintiff and other servers at The Citizen.

44. For example, Defendant required every server, including Plaintiff (as well as Krystle Anich), to remit a uniform two percent (2%) tip-out to the oyster shuckers each shift.

45. Defendant implemented and enforced the foregoing tip-pool/tip-out. Participation in Defendant's tip-pool/tip-out policy was compulsory; refusal by Plaintiff or any server resulted in disciplinary action, including possible termination.

46. Defendant's inclusion of ineligible participants in the tip pool and retention of a portion of servers' tips violates 29 U.S.C. § 203(m). Plaintiff and the Collective are therefore entitled to recover all misappropriated tip amounts, unpaid federal wages, plus an equal amount as liquidated damages under 29 U.S.C. § 216(b).

47. Defendant knew, or at minimum recklessly disregarded, that the FLSA limits tip-pool participation to workers who customarily and regularly receive tips. *See* 29 U.S.C. § 203(m)(2)(A). Nevertheless, Defendant continued these practices during the limitations period, rendering the violations willful.

48. Publicly available records reflect that Defendant has owned and operated The Citizen since *at least* sometime in 2021.

49. Although Defendant has owned and operated The Citizen since at least 2021, it has disregarded § 3(m)'s requirements, mandating tip-credit notice, tip retention, and pooling only among customarily tipped employees.

50. As a result of the foregoing, Plaintiff and the members of the Tip-Pool Collective have suffered loss of tip income and unpaid federal wages, for which they seek recovery of all unpaid amounts, liquidated damages, and reasonable attorneys' fees and costs under 29 U.S.C. § 216(b).

**DEFENDANT FAILED TO PROVIDE SERVERS WITH SUFFICIENT NOTICE OF THE TIP CREDIT**

51. During the past five (5) years preceding the filing of this Complaint, Defendant availed itself of the tip credit by applying portions of Plaintiff's and all other servers' earned tips toward its minimum-wage obligations and, consequently, paid Plaintiff and all other servers a direct hourly wage below the applicable Florida minimum wage.

52. Specifically, during all times material hereto, Defendant claimed a $3.02 tip credit for each compensable hour worked by Plaintiff and all other servers, thereby applying that amount against its minimum-wage obligations.

53. Before taking a tip credit, Defendant was required to notify Plaintiff and all other servers of: (1) the amount of the cash wage that is to be paid to the server by Defendant; (2) the additional amount by which the wages of the server are increased on account of the tip credit claimed by Defendant; (3) that the tip credit claimed by Defendant may not exceed the value of tips actually received by the server; (4) that all tips received by the server must be retained by server except for a tip pooling arrangement limited to employees who customarily and regularly receive tips; and (5) that the tip credit shall not apply to any employee who has not been informed of the requirements in this section. *See* 29 U.S.C. § 203(m)(2)(A); 29 C.F.R. § 531.59(b).

54. Despite claiming a tip credit, Defendant failed to provide the requisite notice to Plaintiff and the putative Tip Notice Class.

55. In sum, Defendant (1) failed to provide the statutorily required tip credit notice under Florida law and (2) failed to pay the applicable Florida minimum wage.

56. Defendant's violation was willful. Since Congress's 1974 amendments to FLSA § 3(m), the statute has conditioned any tip credit on the employee being informed by the employer of the provisions of this subsection and on the employee retaining all tips (subject only to a valid

tip pool). *See* 29 U.S.C. § 203(m)(2)(A). The FMWA incorporates the FLSA's tip-credit framework and implementing regulations.[1]

57. Despite this long-established governing framework, Defendant reduced Plaintiff's and all other servers' cash wage based on a claimed tip credit without first providing the required tip-credit disclosures, knowingly or recklessly disregarding that such notice is a statutory prerequisite.

58. Accordingly, Plaintiff and all Tip Notice Class are entitled to recover the full Florida minimum wage for each hour worked, together with an additional equal amount as liquidated damages, and an award of reasonable attorneys' fees and costs.

**DEFENDANT REQUIRED SERVERS TO PERFORM EXCESSIVE NON-TIPPED WORK UNRELATED TO THE TIPPED OCCUPATION AND OTHER NON-SERVING DUTIES BEYOND "MORE THAN OCCASIONAL" LIMITS**

59. Defendant required Plaintiff and all other servers to perform substantial non-tipped work, including side-work and tasks unrelated to the tipped occupation, in amounts exceeding "more than occasional" limits, while paying a reduced direct cash wage.

60. Specifically, during all times material hereto, Defendant routinely assigned Plaintiff and all other servers non-tipped work totaling *at least* two (2) hours per shift.

61. This non-tipped work included, but was not limited to: brewing coffee; polishing silverware and glassware; restocking supplies such as cleaning materials and dishware; vacuuming; mixing and preparing sauces; restocking wine; checking the restaurant's inventory of wine; sweeping; mopping; scrubbing walls; folding napkins; cutting lemons and limes; stuffing

---

[1] *Rovira v. Trattoria Romana, Inc.*, No. 23-CV-80916-AMC, 2024 WL 693063, *1, 3 (S.D. Fla. Jan. 26, 2024), report and recommendation adopted, No. 23-80916-CIV, 2024 WL 691560 (S.D. Fla. Feb. 20, 2024)

olives with bleu cheese; preparing iced tea and lemonade; taking trash out; setting up the outdoor/patio dining area; setting-up/breaking-down restaurant sections for large events; and training new employees.

62. Defendant's "Front-of-the-House Training Packet" expressly states that servers are responsible for side work, including cutting lemons and folding napkins.

63. Defendant knew or should have known that these pay practices violated applicable wage-and-hour requirements.

64. Notwithstanding its awareness of the FLSA and implementing regulations, Defendant willfully failed to pay Plaintiff and Dual Jobs Class the full Florida minimum wage for hours spent on non-tipped, unrelated, or excessive non-serving work.

65. Accordingly, for all hours in which Plaintiff and the Dual Jobs Class performed non-tipped duties in amounts exceeding "more than occasional" thresholds, Defendant could not lawfully take a tip credit; Plaintiff and the Dual Jobs Class are therefore entitled to recover the full Florida minimum wage for those hours, an additional equal amount as liquidated damages, and reasonable attorneys' fees and costs.

**DEFENDANT FAILS TO COMPLY WITH ELEVENTH CIRCUIT INTERPRETATION AND APPLICATION OF DUAL JOBS REGULATION, 29 C.F.R. § 531.56**

66. On September 15, 2021, the United States Court of Appeals for the Eleventh Circuit held that the Dual Jobs Regulation, 29 C.F.R. § 531.56, is "genuinely ambiguous concerning the amount of time a 'tipped employee' can spend doing untipped but related duties and concerning what tasks constitute related duties." *See Rafferty v. Denny's, Inc.*, 13 F.4th 1166, 1179 (11th Cir. 2021).

67. The Eleventh Circuit further held that "[w]hen we employ the traditional tools of interpretation to determine the meaning of the dual-jobs regulation, we conclude that the regulation prohibits employers from taking the tip credit for hours when an employee performed unrelated duties or performed related duties for more than twenty percent of her time." *Id.* at 1188.

68. Accordingly, employers in the Eleventh Circuit are forbidden from taking a tip credit when they compel servers (such as Plaintiff) to perform unrelated duties or spend more than 20% of their workweek performing unrelated duties.

69. During all times material hereto, Defendant required Plaintiff and the Dual Jobs Class to perform unrelated duties and related side work duties for more than 20% for the workweek.

70. For example, Plaintiff spent at least thirty-three (33%) percent of his workweek performing non-tipped work.

## CLASS ALLEGATIONS

71. During the past five (5) years preceding the filing of this Complaint, Defendant uniformly failed to pay Plaintiff and the putative class members employed at The Citizen the Florida minimum wage by taking a tip credit without providing the required, statutorily compliant tip-credit notice.

72. Within the five (5) years preceding the filing of this action, Defendant employed no fewer than fifty (50) servers who were paid a reduced direct cash wage pursuant to a tip credit without receiving the required, statutorily compliant tip-credit notice under Florida law.

73. At all times material, Defendant knew or should have known that Plaintiff and the putative class members performed work for which they were not properly paid, including hours compensated at a direct cash rate below the applicable Florida minimum wage.

74. Plaintiff and the class members worked for Defendant at The Citizen as servers, performing the same or substantially similar core duties, taking orders, serving food and beverages, and additional non-tipped side work required by Defendant.

75. At all relevant times, Plaintiff and class members were paid under an identical tip-credit structure that reduced their direct cash wage by $3.02 per hour and were subject to uniform, restaurant-wide policies concerning wages and tips.

76. Although Defendant was aware of the requirements of the Florida Constitution and FMWA, and the pertinent regulations thereto, Defendant willfully and/or intentionally failed to pay Plaintiff and the class members in accordance with state law.

**DEFENDANT'S TORTIOUS INTERFERENCE WITH PLAINTIFFS' SUBSEQUENT EMPLOYMENT**

77. Approximately one week prior to August 11, 2025, O-Ku Alys Beach's general manager, Deni Gilson, extended offers of employment to Plaintiffs Jay Anich and Krystle Anich for server positions at O-Ku, located at 27 Admiralty Row, Suite R102, Alys Beach, Florida 32461 ("O-Ku").

78. Plaintiffs promptly accepted O-Ku's employment offers.

79. On August 11, 2025, Plaintiffs both received, completed, and submitted all required onboarding documents.

80. On or about August 13, 2025, Plaintiffs collectively tendered their resignations from The Citizen to Defendant, stating that they were providing Defendant with one week's notice.

81. The next day, August 14, 2025, The Citizen, through Angela Walton, an owner and manager of The Citizen, released Plaintiffs from further duties and instructed them not to report for their remaining scheduled shifts.

82. When Walton terminated Plaintiffs' employment, she told Plaintiffs, "if you are thinking of going to work at O-Ku, it's not going to work out for you."

83. Later on August 14, 2025, Ms. Gilson, GM at O-Ku, texted Plaintiff Jay Anich and advised that O-Ku's upper management had directed her to terminate Mr. Anich's and Mrs. Anich's employment at O-Ku.

84. In that message, Ms. Gilson explained that the rescission was the result of Defendant's communications with, and pressure on, O-Ku's upper management not to hire Plaintiffs. A screenshot of Ms. Gilson's text to Jay Anich is below:



85. As demonstrated in the aforementioned text message from Ms. Gilson, Defendant's reasoning for interfering with Plaintiffs' subsequent employment was that Plaintiffs did not give "proper notice" to Defendant when resigning from their positions at The Citizen.

86. Defendant's purported reason for interfering with Plaintiffs' subsequent employment provides no legitimate or legal justification.

87. Walton facilitated the termination of Plaintiffs' subsequent employment while acting in her capacity as a manager for Defendant. By and through Walton, Defendant participated in, directed, and/or approved the interference into Plaintiffs' subsequent employment.

## COUNT I – COLLECTIVE ACTION
Federal Wage Violations
On Behalf of Jay Anich And All Others Similarly Situated
(TIP-POOL COLLECTIVE)

88. Plaintiff Jay Anich re-alleges and re-avers Paragraphs 1 through 87 as though fully set forth herein.

89. During all times material hereto, Defendant has violated the FLSA by requiring Plaintiff and all other similarly situated servers working at The Citizen to remit at least a portion of their hard-earned tips to ineligible participants, e.g. oyster shuckers.

90. Plaintiff and all other similarly situated servers were entitled to retain all tips they earned and to receive the full Florida minimum wage for every hour worked during their employment with Defendant.

91. Pursuant to 29 U.S.C. § 216(b), Plaintiff seeks to recover all tips unlawfully kept or diverted in violation of 29 U.S.C. § 203, in addition to any and all unpaid federal wages, for himself and the following similarly situated Tip-Pool Collective:

> **<u>Tip-Pool Collective</u>: All current and former individuals employed by Defendant as servers (including those titled "server," "waiter," or "waitress") at The Citizen Walton County, Florida, who, at any time within the three years preceding the filing of this Complaint, (i) were required to participate in a tip pool that included ineligible participants (e.g., non-tipped back-of-house personnel such as oyster shuckers), or (ii) had any portion of their tips retained, shared, or diverted to ineligible participants.**

92. Defendant's willful and/or intentional violations of the FLSA entitle Plaintiff and the putative collective members to an additional amount of liquidated, or "double," damages.

93. As a direct and proximate result of Defendant's invalid tip pool/tip out policies and practices, Plaintiff and the collective members have suffered damages in the form of lost tips and unpaid federal wages for one or more workweeks.

WHEREFORE, Plaintiff, JAY ANICH, on behalf of himself and all other servers similarly situated, respectfully requests that this Honorable Court enter judgment in his favor and against Defendant, QUEST HOSPITALITY CONCEPTS, LLC d/b/a THE CITIZEN, and award Plaintiff, and all other servers similarly situated: (a) all misappropriated tips retained by Defendant; (b) all unpaid federal wages; (c) an equal amount of liquidated damages; (d) all reasonable attorney's fees and litigation costs permitted under the FLSA; and (e) any and all such further relief as the Court deems just and reasonable under the circumstances.

## <u>COUNT II – CLASS ACTION</u>

Florida Minimum Wage Violations
On Behalf of Jay Anich and All Other Servers
(TIP-NOTICE CLASS)

94. Plaintiff Jay Anich hereby re-alleges and re-avers Paragraphs 1 through 87 as though set forth fully herein.

95. Defendant violated the terms of Fla. Stat. § 448.110 and the Florida Constitution's minimum wage requirements by taking a tip credit toward the applicable Florida minimum wage but by failing to provide Plaintiff and the putative class members the statutorily required tip notice for the past five (5) years. The Florida tip credit requirements are modeled after the FLSA.

96. Before taking a tip credit, Defendant was required to notify servers of: (1) the amount of the cash wage that is to be paid to the server by Defendant; (2) the additional amount by which the wages of the server are increased on account of the tip credit claimed by Defendant; (3) that the tip credit claimed by Defendant may not exceed the value of tips actually received by the server; (4) that all tips received by the server must be retained by server except for a tip pooling arrangement limited to employees who customarily and regularly receive tips; and (5) that the tip credit shall not apply to any employee who has not been informed of the requirements in this section. *See* 29 U.S.C. § 203(m)(2)(A); 29 C.F.R. § 531.59(b). Defendant failed to provide Plaintiff and all other servers with sufficient notice.

97. Defendant therefore forfeits any tip credit under Florida law and owes Plaintiff and each server *at least* $3.02 for each hour of work they performed within the past five (5) years.

98. On August 28, 2025, Plaintiff, Jay Anich, through the undesigned counsel served Defendant with a written pre-suit notice and demand pursuant to Fla. Stat. § 448.110, on behalf of himself, and a class of all similarly situated servers.

99. More than fifteen (15) calendar days have elapsed since Plaintiff served Defendant with his written pre-suit notice and demand and as the date and time of this filing, Defendant has failed to tender full payment to Plaintiff and the putative class members.

100. From January 1, 2021, through September 29, 2021, the Florida minimum wage was $8.65 per hour.

101. From September 30, 2021, through September 29, 2022, the Florida minimum wage was $10.00 per hour.

102. From September 30, 2022, through September 29, 2023, the Florida minimum wage was $11.00 per hour.

103. From September 30, 2023, through September 29, 2024, the Florida minimum wage is/was $12.00 per hour.

104. From September 30, 2024, through September 30, 2025, the Florida minimum wage is/was $13.00 per hour.

105. From September 30, 2025, through the present, the Florida minimum wage is/was $14.00 per hour.

106. Plaintiff and the proposed Tip Notice Class members are/were subjected to similar violations of the FMWA and Florida Constitution.

107. Plaintiff seeks class certification under Fed. R. Civ. P. 23 of the following Class for Defendant's failure to pay Florida minimum wages:

> **<u>Tip Notice Class</u>: All current and former individuals employed by Defendant at The Citizen in Walton County, Florida, as servers (including those titled "server," "waiter," or "waitress") during the five (5) years preceding the filing of this action who were paid a direct cash wage below the full Florida minimum wage based on Defendant's taking of a tip credit without having received proper notice of the tip credit from Defendant.**

## <u>FED. R. CIV. P. 23: CLASS ALLEGATIONS</u>

108. Plaintiff brings this FMWA claim as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the above class (the "Tip Notice Class").

109. The putative Tip Notice Class members are treated equally and similarly by Defendant, in that they were denied full and proper Florida minimum wages based on Defendant's failure to provide Plaintiff and the putative Class sufficient notice of Defendant's intent to rely upon a tip credit under Florida law.

110. *Numerosity*: Defendant employed in excess of fifty (50) servers during the past five (5) years who were not provided the required tip notice; nevertheless, Defendant claimed a tip credit for these employees. Given Defendant's long-standing operations and the systematic nature of its failure to comply with Florida law, the Class consists of numerous members such that joinder of all is impracticable.

111. Plaintiff and the Tip Notice Class members were subject to the same employment policies.

112. *Commonality*: Common questions of law and fact exist as to all members of the Class and such questions predominate over any questions solely affecting any individual member of the Class, including Plaintiff. Such questions common to the class include, but are not limited to, the following: (a) whether Plaintiff and the Tip Credit Class were "employees" of Defendant; (b) whether Plaintiff's and the Tip Credit Class's hours were properly recorded; (c) whether Defendant violated the Florida minimum wage rights of Plaintiff and the Tip Notice Class under the FMWA by failing to provide sufficient notice of taking a tip credit; (d) whether Defendant willfully or intentionally refused to pay Plaintiff and the Tip Notice Class the Florida minimum wages as required under Florida law; (e) whether Defendant knew or should have known of the

Florida minimum wage requirements and either intentionally avoided or recklessly failed to investigate proper payroll practices; and (f) the nature, extent, and measure of damages suffered by the Plaintiff and the Tip Notice Class based upon Defendant's conduct.

113. *Typicality*: Plaintiff's claims are typical of the claims of the members of the Tip Notice Class. Plaintiff, like all members of the Tip Notice Class, worked for Defendant as a server at its restaurant, The Citizen, and was paid at a reduced hourly rate offset by a claimed tip credit. Neither Plaintiff nor other class members received clear and advance notice of the tip credit as required by Florida law. These pay practices were applied uniformly across Defendant's restaurant operations, resulting in the same type of wage violations for all class members.

114. *Adequacy*: Plaintiff will fairly and adequately protect the interests of the Tip Notice Class. Plaintiff has no interest that might conflict with the interests of the Tip Notice Class. Plaintiff is interested in pursuing his claims against Defendant vigorously and has retained counsel competent and experienced in class and complex litigation.

115. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to arise in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

116. Defendant has applied the same pay practices and lack of tip credit notice to all members of the Tip Notice Class. Because these practices arise from uniform, restaurant-wide

policies, adjudicating the claims on a class-wide basis will ensure consistent determinations and avoid the risk that separate lawsuits could result in conflicting rulings on Defendant's wage obligations.

117. Without a class action, Defendant will likely continue to retain the benefit of their wrongdoing and will continue a course of conduct that will result in further damages to Plaintiff and the Tip Notice Class.

118. Plaintiff and the Tip Notice Class members performed the same job duties, as servers, and were paid in an identical manner by Defendant based on Defendant's failure to provide Plaintiff and the Tip Notice Class members the appropriate tip credit notice when Defendant claimed a tip credit.

119. Plaintiff and the Tip Notice Class members were not paid proper Florida minimum wages during the relevant time period.

120. Defendant either willfully chose not to comply with the FMWA's tip credit laws, and deliberately failed to pay the Tip Notice Class properly, or failed to make an adequate inquiry into whether its conduct was in compliance with the FMWA. As a result, Defendant either knew, or showed reckless disregard for, the applicable provisions of the FMWA.

121. Defendant was aware of the requirements of the FMWA, and the pertinent regulations thereto, yet acted willfully in failing to pay Plaintiff and the Tip Notice Class members in accordance with the law.

122. Based on information reasonably available to Plaintiff, including the number of servers employed during overlapping time periods at Defendant's restaurant locations, Plaintiff estimates that the Tip Notice Class consists of more than fifty (50) individuals. The precise size

and identity of the Class can be determined through Defendant's business, tax, and personnel records.

123. This action is intended to include each and every server who worked at The Citizen in Walton County, Florida, during the past five (5) years who was not provided the requisite tip credit notice during any workweek.

124. During all times material hereto, Plaintiff and all Tip Notice Class members were non-exempt employees of Defendant.

125. Plaintiff and the Tip Notice Class members performed work as servers, which was an integral part of Defendant's business.

126. Defendant violated the FMWA and the Florida Constitution's provision on minimum wages by not providing Plaintiff and the putative Tip Notice Class members the requisite tip credit notice.

127. The additional persons who may become plaintiffs in this action are other former and current servers at The Citizen, employees with positions similarly situated to Plaintiff, and who suffered from the same pay practices of not being properly paid at least Florida's minimum wage for each hour worked due to Defendant's failure in providing an adequate tip credit notice.

128. Plaintiff has complied with pre-suit notice, and all other conditions precedent to this action have been performed, or waived, by sending Defendant a pre-suit Florida Minimum Wage demand letter (on or about August 28, 2025) as required by Florida law before this claim was filed.

129. A class action suit, such as this one, is superior to other available means for the fair and efficient adjudication of the lawsuit. The damages suffered by individual members of the class

may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the class to individually seek redress for the wrongs done to them.

130. A class action is, therefore, superior to other available methods for the fair and efficient adjudication of the controversy. Absent these actions, many members of the class likely will not obtain redress of their damages and Defendant will retain the proceeds of their violations of the FMWA and Florida Constitution.

131. Furthermore, even if every member of the class could afford individual litigation against Defendant, it would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy, efficiency, and parity among the claims of individual members of the class and provide for judicial consistency.

132. The relief sought is common to the entire class including, among other things: (a) payment by Defendant of actual damages caused by their failure to pay minimum wages pursuant to the Florida Constitution and/or Fla. Stat. § 448.110; (b) payment by Defendant of liquidated damages caused by their failure to pay minimum wages pursuant to the Florida Constitution and/or Fla. Stat. § 448.110 as a result of Defendant's intentional and/or willful violations; and (c) payment by Defendant of the costs and expenses of this action, including reasonable attorney's fees of Plaintiffs' counsel.

133. Plaintiff and the Tip Notice Class members have sustained damages arising out of the same wrongful and company-wide employment policies of Defendant in violation of the FMWA and the Florida Constitution.

134. Defendant's willful and/or intentional violations of state law entitle Plaintiffs and the putative Tip Notice Class members to an additional amount of liquidated, or double, damages.

WHEREFORE, Plaintiff, JAY ANICH, respectfully requests that this Honorable Court enter judgment in his favor against Defendant, QUEST HOSPITALITY CONCEPTS, LLC d/b/a THE CITIZEN, and award Plaintiff, and the putative class: (a) unpaid Florida minimum wages to be paid by Defendant; (b) the tip credit unlawfully taken by Defendant; (c) liquidated damages to be paid by Defendant; (d) all reasonable attorney's fees and litigation costs permitted by the Florida Constitution and Fla. Stat. § 448.110 to be paid by Defendant; and any and all such further relief as the Court deems just and reasonable under the circumstances.

**COUNT III –CLASS ACTION**
Florida Minimum Wage Violations
On Behalf of Jay Anich and All Other Servers
(DUAL JOBS CLASS)

135. Plaintiff Jay Anich hereby re-alleges and re-avers Paragraphs 1 through 87 as though set forth fully herein.

136. Defendant claimed a tip credit under Florida law for each hour of work performed by Plaintiff and all other servers during the previous five (5) years.

137. Plaintiff and all other similarly situated servers are/were entitled to be paid Florida's full minimum wage during their employment with Defendant.

138. Plaintiff and the proposed class members were subjected to similar violations of Florida law as a result of Defendant's failure to pay them the full state minimum wage when they were required to spend more than 20% of their workweek performing non-tipped duties and side work.

139. Plaintiff seeks recovery of Florida minimum wages under Fed. R. Civ. P. 23 for himself and the following class for Defendant's failure to pay constitutionally mandated state minimum wages:

> **Dual-Jobs Class: All current and former individuals employed by Defendant at The Citizen in Walton County, Florida, as servers (including those titled "server," "waiter," or "waitress") during the five (5) years preceding the filing of this action who were paid a direct cash wage below the full Florida minimum wage while required to perform non-tipped work (either duties of a separate, non-tipped occupation or related side-work exceeding "more than occasional" limits), without being paid at least the full Florida minimum wage for that time.**

**FED. R. CIV. P. CLASS ALLEGATIONS**

140. Plaintiff brings his dual-jobs claim under the FMWA as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the above class.

141. The putative Dual Jobs Class members are treated equally and similarly by Defendant, in that they were denied Florida minimum wages during the previous five (5) years based upon Defendant requiring Plaintiff and similarly situated servers to spend more than 20% of their workweeks performing non-tipped duties and side work.

142. *Numerosity:* Defendant employed at least fifty (50) servers at The Citizen in Walton County, Florida, during the past five (5) years who were required to spend more than 20% of their workweeks performing non-tipped duties and side work and were not paid the pertinent Florida minimum wage.

143. Given Defendant's size and the systematic nature of its failure to comply with Florida law, the members of the Class are so numerous that joinder of all members is impractical.

144. Plaintiff and the Dual Jobs Class members were victims of the same policies, including Defendant's requirement that employees spend more than 20% of each workweek performing non-tipped duties and side work.

145. *Commonality:* Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting any individual member of the Class, including Plaintiff. Such questions common to the Class include, but are not limited to the following: (a) whether Plaintiff and the Dual Jobs Class members were "employees" of Defendant; (b) whether Plaintiff and the Dual Jobs Class's hours were properly recorded; (c) whether Defendant violated the Florida minimum wage rights of Plaintiff and the Dual Jobs Class under the FMWA and Florida Constitution by failing to compensate the putative class the full state minimum wage when they spent more than 20% of their workweek performing non-tipped duties and side work; (d) whether Defendant willfully or intentionally refused to pay Plaintiff and the Dual Jobs Class Florida minimum wages; (e) whether Defendant knew or should have known of the Florida minimum wage requirements and either intentionally avoided or recklessly failed to investigate proper payroll and time keeping practices; and (f) the nature, extent, and measure of damages suffered by Plaintiff and the Dual Jobs Class.

146. *Typicality:* Plaintiff's claims are typical of the claims of the members of the Dual Jobs Class. Plaintiff's claims arise from Defendant's company-wide policy of claiming a tip credit for all servers and requiring them spend more than 20% of their workweek on non-tipped duties and side work.

147. *Adequacy*: Plaintiff will fairly and adequately protect the interests of the Dual Jobs Class. Plaintiff has no interest that might conflict with the interests of the Dual Jobs Class. Plaintiff

is determined to pursue his claims against Defendant vigorously and has retained counsel competent and experienced in class and employment litigation.

148. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

149. Defendant acted on grounds generally applicable to the Dual Jobs Class, thereby making relief appropriate with respect to the Dual Jobs Class as a whole. Prosecution of separate actions by individual members of the Dual Jobs Class would create the risk of varying adjudications with respect to the individual members of the Dual Jobs Class that would establish incompatible standards of conduct for Defendant.

150. The identity of the Dual Jobs Class is readily identifiable from Defendant's records.

151. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent these actions, many members of the class likely will not obtain redress of their damages and Defendant will retain the proceeds of its violations of the FMWA and Florida Constitution.

152. Furthermore, even if every member of the Dual Jobs Class could afford individual litigation against Defendant, it would be unduly burdensome to the judicial system. Concentrating

the litigation in one forum will promote judicial economy, efficiency, and parity among the claims of individual members of the class and provide for judicial consistency.

153. Plaintiff and the Dual Jobs Class members performed the same job duties, as restaurant servers, and were paid in an identical manner by Defendant based on Defendant requiring restaurant servers to spend more than 20% of shifts and workweeks on non-tipped duties and side work without paying servers at least the full applicable Florida minimum wage.

154. This action is intended to include each and every restaurant server who worked for Defendant at The Citizen in Walton County, Florida, during the past five (5) years who was required to spend more than 20% of their workweek performing non-tipped duties and side work.

155. During all material times hereto, Plaintiff and all Dual Jobs Class members are/were non-exempt, tipped employees of Defendant. The servers' work for Defendant has been an integral part of Defendant's business.

156. In 2019, the Florida minimum wage was $8.46 per hour.

157. In 2020, the Florida minimum wage was $8.56 per hour.

158. From January 1, 2021, until September 29, 2021, the Florida minimum wage was $8.65 per hour.

159. From September 30, 2021, through the September 29, 2022, the Florida Minimum Wage was $10.00 per hour.

160. From September 30, 2022, through September 29, 2023, the Florida Minimum Wage was $11.00 per hour.

161. From September 30, 2023, through September 29, 2024, the Florida Minimum Wage was/is $12.00 per hour.

162. From September 30, 2023, through the present, the Florida Minimum Wage was/is $13.00 per hour.

163. From September 30, 2024, through September 30, 2025, the Florida minimum wage is/was $13.00 per hour.

164. From September 30, 2025, through the present, the Florida minimum wage is/was $14.00 per hour.

165. Plaintiff has complied with the pre-suit notice requirement, and all other conditions precedent to this action have been performed, or waived, by sending Defendant a Florida minimum wage demand (on or about August 28, 2025) before this lawsuit was filed.

166. More than fifteen (15) calendar days have passed since Defendant received the Florida minimum wage demand letter and no payment has been tendered by Defendant to compensate Plaintiff and the putative Dual Jobs Class for the minimum wages owed.

167. The relief Plaintiff seeks is common to the entire class including, inter alia: (a) payment by the Defendant of actual damages caused by its failure to pay minimum wages pursuant to the Florida Minimum Wage Act and Florida Constitution; (b) payment by the Defendant of liquidated damages caused by its intentional and/or willful failure to pay minimum wages pursuant to the Florida Minimum Wage Act and Florida Constitution; (c) payment by the Defendant of the costs and expenses of this action, including attorney's fees and costs of Plaintiff's counsel.

168. Defendant either willfully chose not to comply with the FMWA's Dual Jobs laws, and deliberately failed to pay the Dual Jobs Class properly, or failed to make an adequate inquiry into whether its conduct was in compliance with the FMWA. As a result, Defendant either knew, or showed reckless disregard for, the pertinent Dual Jobs laws under the FMWA.

169. Defendant was aware of the requirements of the FMWA, and the pertinent regulations thereto, yet acted willfully in failing to pay Plaintiff and the Dual Jobs Class members in accordance with the law.

170. Defendant's willful and/or intentional violations of state law entitle Plaintiff and the putative Dual Jobs Class members to an additional amount of liquidated, or double, damages.

171. As a direct and proximate result of Defendant's deliberate underpayment of wages, Plaintiff and the Dual Jobs Class members have been damaged in the loss of Florida minimum wages for one or more weeks of work during their employment with Defendant.

WHEREFORE, Plaintiff, JAY ANICH, respectfully requests that this Honorable Court enter judgment in his favor against Defendant, QUEST HOSPITALITY CONCEPTS, LLC d/b/a THE CITIZEN, and award Plaintiff, and the putative Dual Jobs Class: (a) unpaid Florida minimum wages to be paid by Defendant; (b) the tip credit unlawfully taken by Defendant; (c) liquidated damages to be paid by Defendant; (d) all reasonable attorney's fees and litigation costs permitted by the Florida Constitution and Fla. Stat. § 448.110 to be paid by Defendant; and any and all such further relief as the Court deems just and reasonable under the circumstances.

## <u>COUNT IV – TORTIOUS INTERFERENCE</u>

On Behalf of Plaintiff Jay Anich

172. Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 87 as though set forth fully herein.

173. Plaintiff had an existing business relationship with a third-party, O-Ku; specifically, Plaintiff had been employed by O-Ku since on or about August 11, 2025.

174. At the time of Defendant's interference with Plaintiff's relationship with O-Ku, Plaintiff's employment at O-Ku had already been established: O-Ku had extended employment offers, Plaintiff accepted, onboarding was completed, and Plaintiff's start date was set.

175. Defendant had actual knowledge of Plaintiff's employment with O-Ku. Indeed, on or about August 14, 2025, Defendant's owner and manager, Angela Walton, expressly cautioned Jay Anich (as well as Plaintiff Krystle Anich) to not work at O-Ku; Walton's statement discouraging Plaintiff from working at O-Ku establishes, at minimum, Defendant's actual knowledge of Plaintiff's employment with O-Ku.

176. On or before August 14, 2025, Defendant, through Walton, intentionally communicated with and pressured O-Ku's upper management to terminate Plaintiff's employment at O-Ku.

177. On August 14, 2025, O-Ku terminated Plaintiff's employment as a direct result of Walton's interference, as reflected in a text message from O-Ku's general manager, Deni Gilson.

178. At all relevant times, Walton acted within the course and scope of her authority for Defendant, and Defendant authorized and participated in her conduct.

179. Defendant's interference occurred only after Plaintiff's employment relationship with O-Ku existed, or was reasonably certain to materialize.

180. Defendant's interference with Plaintiff's subsequent employment was without legal justification or privilege.

181. Defendant was a stranger to the employment relationship between Plaintiff and third-party O-Ku.

182. Defendant was neither a party to the employment relationship between Plaintiff and O-Ku nor possessed of any legal, supervisory, or economic interest in it.

183. As a direct and proximate result of Defendant's interference, Plaintiff has suffered damages including but not limited to, the loss of the O-Ku position, back pay from the anticipated start date, front pay until comparable employment is obtained, and other consequential losses, together with applicable interest and costs.

WHEREFORE, Plaintiff, JAY ANICH, respectfully requests entry of judgment in his favor and against Defendant, QUEST HOSPITALITY CONCEPTS, LLC d/b/a THE CITIZEN, awarding: (a) compensatory damages for lost earnings and other economic losses proximately caused by the interference; (b) consequential and/or special damages that were the natural, probable, and foreseeable result of the interference; and (c) such other and further relief as the Court deems just and proper.

## COUNT V – TORTIOUS INTERFERENCE
On Behalf of Plaintiff Krystle Anich

184. Plaintiff Krystle Anich hereby re-alleges and re-avers Paragraphs 1 through 87 as though set forth fully herein.

185. Plaintiff had an existing business relationship with a third-party, O-Ku; specifically, Plaintiff had been employed by O-Ku since on or about August 11, 2025.

186. At the time of Defendant's interference with Plaintiff's relationship with O-Ku, Plaintiff's employment at O-Ku had already been established: O-Ku had extended employment offers, Plaintiff accepted, onboarding was completed, and Plaintiff's start date was set.

187. Defendant had actual knowledge of Plaintiff's employment with O-Ku. Indeed, on or about August 14, 2025, Walton expressly cautioned Krystle Anich (along with Plaintiff Jay Anich) to not work at O-Ku; her statement discouraging Plaintiff from working at O-Ku establishes, at minimum, Defendant's actual knowledge of Plaintiff's employment with O-Ku.

188. On or before August 14, 2025, Defendant, through Walton, intentionally communicated with and pressured O-Ku's upper management to terminate Plaintiff's employment at O-Ku.

189. On August 14, 2025, O-Ku terminated Plaintiff's employment as a direct result of Walton's interference, as reflected in a text message from O-Ku's general manager, Deni Gilson.

190. At all relevant times, Walton acted within the course and scope of her authority for Defendant, and Defendant authorized and participated in her conduct.

191. Defendant's interference occurred only after Plaintiff's employment relationship with O-Ku existed, or was reasonably certain to materialize.

192. Defendant's interference with Plaintiff's subsequent employment was without legal justification or privilege.

193. Defendant was a stranger to the employment relationship between Plaintiff and third-party O-Ku.

194. Defendant was neither a party to the employment relationship between Plaintiff and O-Ku nor possessed of any legal, supervisory, or economic interest in it.

195. As a direct and proximate result of Defendant's interference, Plaintiff has suffered damages including but not limited to, loss of the O-Ku position, back pay from the anticipated start

date, front pay until comparable employment is obtained, and other consequential losses, together with applicable interest and costs.

WHEREFORE, Plaintiff, KRYSTLE ANICH, respectfully requests entry of judgment in her favor and against Defendant, QUEST HOSPITALITY CONCEPTS, LLC d/b/a THE CITIZEN, awarding: (a) compensatory damages for lost earnings and other economic losses proximately caused by the interference; (b) consequential and/or special damages that were the natural, probable, and foreseeable result of the interference; and (c) such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, JAY ANICH on behalf of himself and the putative Collective and Classes, and Plaintiff, KRYSTLE ANICH, demand a trial by jury on all appropriate claims.

**Date: October 16, 2025**

Respectfully Submitted,

**USA EMPLOYMENT LAWYERS-**
**JORDAN RICHARDS, PLLC**
1800 SE 10th Ave, Suite 205
Fort Lauderdale, Florida 33316

Ph: (954) 871-0050
*Co-Counsel for Plaintiff*

By: *_/s/ Michael V. Miller_*
MICHAEL MILLER, ESQUIRE
Florida Bar No. 64005
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372
*Michael@usaemploymentlawyers.com*
*Jordan@jordanrichardspllc.com*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing document was filed via CM/ECF on October 16, 2025.

By: *_/s/ Michael V. Miller_*
MICHAEL V. MILLER, ESQUIRE
Florida Bar No. 0064005

## SERVICE LIST